1  JOSEPH IPARAGUIRRE
   11801 PIERCE STREET
2  SECOND FLOOR
   RIVERSIDE, CA  92505
3  (951) 779-6998

FILED

2023 MAR -1  PM 2: 59

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
RIVERSIDE

BY:

6            UNITED STATES DISTRICT COURT

7   CENTRAL DISTRICT OF CALIFORNIA EASTERN DIVISION

9  **JOSEPH IPARAGUIRRE**              Case No:  5:21-CV-02110-JWH-KK

10             Plaintiff,              **SECOND AMENDED COMPLAINT**

11 v.                                  BREACH OF THE EMPLOYEE
                                       RETIREMENT INCOME SECURITY ACT
12 **ANTHEM BLUE CROSS LIFE and**      OF 1974; ENFORCEMENT AND
   **HEALTH INSURANCE COMPANY A**      CLARIFICATION OF RIGHTS;
13 **CALIFORNIA CORPORATION**          PREJUDGEMENT AND POSTJUDGEMENT
   and Does 1 through 100,             INTEREST; AND LEGAL FEES AND
14 inclusive,                          COSTS; ERISA 502 (A) 3 EQUITABLE
                                       SURCHARGE; COMPENSATORY DAMAGES
15             Defendants.             AND PUNITIVE DAMAGES.

18            **PRELIMINARY STATEMENT**

19      1.   The plaintiff, Joseph Iparaguirre, brings this action

20 to recover damages and for equitable relief under the provisions

21 of the Employee Retirement Income Security Act ("ERISA"), 29

22 U.S.C. § 1001 et seq.; and particularly 29 U.S.C. § 1140, to

23 redress his right to receive medically necessary treatment under

24 an employee benefit plan.

25      2.   The plaintiff also seeks compensatory damages on

26 ERISA's enforcement provision 502 (a) and 29 U.S.C. § 185.

28            **JURISDICTIONAL ALLEGATIONS**

1

**COMPLAINT AND JURY TRIAL DEMAND**

3.    This Court has jurisdiction under 28 U.S.C. § 1331. This action brought under 29 U.S.C. § 1132 (e) 1 of the Employee Retirement Income Security Act of 1974 (hereafter) ERISA.

4.    To the extent this action involves rights, duties and obligations of the parties that do not involve ERISA benefit recovery claims, jurisdiction arises pursuant to 28 U.S.C. § 1367 and principles of supplemental jurisdiction, as any other such non-ERISA claims are so related to the ERISA claims in the action that they form part of the same case and controversy under Article III of the United States Constitution.

## VENUE

5.    This Court is the proper venue for the action pursuant to 28 U.S.C. § 1391 giving rise to this complaint because this is the Judicial District where the allegations took place and because Defendant Anthem conducts a substantial amount of business in this Judicial District.

## PARTIES

6.    At all times material to this lawsuit, Joseph Iparaguirre (hereafter "Plaintiff") is an individual.

7.    The proper defendant in a suit for benefits due under an ERISA plan is the Plan and not the employer as stated in *Gray v. United States Steel Corporation, 2014.*  In particular, in the common situation "where the plaintiff alleges that she is a participant or beneficiary under an insurance-based ERISA plan and the insurance company decides all eligibility questions and owes the benefits, the insurer is a proper defendant in a suit for benefits due under § 1132 (a) (1) (B)."  as stated in *OSF*

*HEALTHCARE SYSTEM v. INSPERITY GROUP HEALTH PLAN, 2015*

8.   At all times material to this lawsuit, Anthem Blue Cross Life and Health Insurance Company, (hereafter "Anthem") Defendant was and is a California corporation, doing business in the State of California.  Anthem is in the business of providing health insurance plans to individuals and Corporations residing and/or doing business in California.

9.   Plaintiff alleges on information and belief that the defendant designated herein as a fictitious named defendant is, in some manner, responsible for the events and happenings referred to, either contractually or tortuously, and/or that such fictitiously named defendants are liable in some manner for the claim.  When Plaintiff ascertains the true names and capacities of Defendant, Plaintiff will amend this complaint accordingly.

10.   All acts necessary or precedent to the bringing of this lawsuit occurred in Riverside County, California.

11.   Plaintiff is informed and believes that Anthem exercised actual control over the determination of payment of benefit claims submitted on behalf of Plaintiff.

12.   Plaintiff alleges and contends that Anthem acted in an arbitrary and capricious manner by underpaying the benefits claim billings submitted on behalf of Plaintiff.

## STATEMENT OF FACTS

13.   Linda Iparaguirre, Plaintiff's wife has been enrolled in Anthem plan through her employer, KPC Health (hereafter "KPC").

**COMPLAINT AND JURY TRIAL DEMAND**

14.   Plaintiff was enrolled in her plan as a covered spouse. KPC and Anthem Member ID FKP HN1002362 was entitled to health benefits under a group (Employer Group:  KPC) employee welfare benefit plan (Group # 281993) (the Plan) regulated by ERISA.

15.   Premium payments were made the entire time for the expressed purpose of receiving medically necessary treatment and services as prescribed by in the policy issued by Anthem.

16.   On October 13, 2013, Plaintiff had x-rays of both knees taken per order of Raja Dhalla, M.D., Orthopedic Surgeon.  After reviewing the x-rays, he noted that Plaintiff had developed osteoarthritis in both knees.  Dr. Dhalla recommended bi-lateral Synvisc-One™ injections for his knees.

17.   Genzyme Corporation (Nasdaq: GENZ) February 26, 2009 today announced that the U.S. Food and Drug Administration (FDA) has granted marketing approval for Synvisc-One™ (hylan G-F 20), a product intended for the relief of pain associated with osteoarthritis (OA) of the knee.  Synvisc-One™ is the only single-injection viscosupplement approved for the treatment of OA knee pain in the United States.  This therapy has the potential to redefine the market for viscosupplementation products by extending the benefits of this therapeutic approach to a broader set of patients and reducing the total cost and burden of multiple injections.

"In just one visit to the doctor's office, patients suffering from osteoarthritis may experience clinically significant pain relief for up to six months and for some patients this pain relief could potentially translate into a **delay in the need for a**

4

**COMPLAINT AND JURY TRIAL DEMAND**

**total knee replacement,**" said Jack M. Bert, M.D., president of the Arthroscopy Association of North America and adjunct clinical professor at the University of Minnesota School of Medicine. "This single injection regimen will provide greater physician and patient convenience."

Synvisc-One™ is administered through a single intra-articular injection.  It is an alternative treatment regimen to Genzyme's Synvisc® (hylan G-F 20), a three-injection viscosupplement approved in the United States in 1997 and in use worldwide for more than 16 years.  Synvisc-One™ contains the same material **(The injection contains a gel-like mixture made from a substance called hyaluronan that comes from chicken combs.  Hyaluronan is a natural substance found in the body and is present in very high amounts in joints.  The body's own hyaluronan acts like a lubricant and a shock absorber in the joint and is needed for the joint to work properly)** and total treatment volume as Synvisc® but provides the 6 ml of hylan G-F 20 in a single injection.  Viscosupplementation is a procedure in which hyaluronic acid or a derivative such as hylan G-F 20 is injected into the knee joint to replace synovial fluid that typically becomes degraded in patients with osteoarthritis. In synovial fluid, hyaluronic acid relieves pain and improves the knee joint's natural shock absorbing abilities.

"Synvisc-One™ is an important therapy for OA of the knee because it delivers long-term pain relief through a single injection without the systemic side effects that can be caused by steroids and anti-inflammatory medication," said Ann Merrifield, president of Genzyme Biosurgery, the business unit of Genzyme Corp. that

**COMPLAINT AND JURY TRIAL DEMAND**

manufactures and markets Synvisc®.

18.    On November 11, 2013 Dr. Raja Dhalla administered bi-lateral Synvisc-One™ injections into Plaintiff's knees.  Within weeks, Plaintiff's motion in both knees vastly improved.

19.    Plaintiff continued the recommended treatment every six months as Dr. Raja Dhalla and Genzyme Corporation (the maker of Synvisc-One™) recommended.

20.    Plaintiff has been able to return to normal activities, easily go on long walks, and stand for longer periods of time. Regularly working out in the gym reduced previous medical conditions which were exacerbated by inactivity.

21.    Plaintiff has x-rays from October 13, 2013 to May 4, 2021.  The x-rays reflect that the treatment is effective for the Plaintiff.

22.    On July 1, 2016, KPC Group changed insurance plans from Blue Shield to Anthem HMO.

23.    In and around May 2017, Anthem on its own declined the bilateral Synvisc-One™ injections.  Dhalla Orthopedic Center, Inc. had exhausted all appeal rights and notified Plaintiff to pay for the treatment.

24.    On September 13, 2017, Plaintiff filed an appeal with Anthem.

25.    Plaintiff started experiencing pain in both knees and had a hard time walking.  Plaintiff had to stop exercising because the pain was so great.  High blood pressure returned and cholesterol levels climbed.

26.    On October 10, 2017, Judg.Dkt.26 p. 18-22 as required

6

**COMPLAINT AND JURY TRIAL DEMAND**

Fed. R. Evid. 902, Anthem reversed their decision and approved the bilateral Synvisc-One™ injections.

27.  Plaintiff had the bilateral Synvisc-One™ injections administered two more times, one year when Plaintiff received a denial letter from Sharp Community Health, under the care of Dr. Adnan Cutuk on July 9, 2018 Judg.Dkt.26 p. 18-20 and 23-24 Fed. R. Evid. 402 note 78.

28.  Plaintiff again started to suffer from pain in both knees.  Dr. Adnan Cutuk administered Corticosteroid injections in both knees.  The treatment was ineffective and there was no change in Plaintiff's condition.  Fed. R. Evid. 803(4).

29.  On July 19, 2018, Anthem declined the treatment again. Plaintiff filed a complaint with the California Department of Managed Health Care.

30.  Plaintiff, again, started to experience pain in both knees, had a hard time walking and had to stop exercising because the pain was so great.  High blood pressure returned, cholesterol levels rose and he started to gain weight.

31.  On October 2, 2018, the Department of Managed Health Care sent their written decision.  In it, Maximus Federal Services provided evidence by one of its physician reviewers that the treatment is Medically Necessary.  Judg.Dkt.26 p. 7-17.  Fed. R. Evid 803 note 551 *see DePinto v. Provident Security Life Insurance Company, 323 F. 2d 826 – Court of Appeals, 9th Circuit; In Wilson v. Blue Cross of California, 222 Cal. App. 3d 660 – Cal:  Court of Appeal, 2nd Appellate Dist., 5th Div. 1990*, Blue Cross "announced that it would not pay for any further hospital

**COMPLAINT AND JURY TRIAL DEMAND**

care". The Court turns to *Fuentes v. Berry, 38 Cal. App. 4th 1800 – Cal: Court of Appeal, 1st Appellate Dist., 4th Div. 1995* that stated, "An appellate court determines de novo whether a genuine issue of material facts exists and the moving party is entitled to summary judgment as a matter of law"; further See *Loper v. COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, Dist. Court, D. Arizona 2019*, "Dr. Heiner offered a variety of courses including "diagnostic arthroscopy, cortisone injections, Synvisc® injections, lubricating gel injections, physical therapy and . . . partial or total knee replacements" – just as with her left knee. (Ex. 32F at 9). Plaintiff reported to physical therapy while waiting on her left knee recovery. (Id.). At Plaintiff's visit one month later, Dr. Heiner recommended Hyalgan injections, (id. at 13), and patient subsequently received three of them to ease her pain, (id. at 14, 18). After each injection, Heiner recorded that Plaintiff "was able to move the [right] knee without difficulty." "

32.  On March 26, 2020 Plaintiff had Dr. Michael Kimball, an Orthopedic Surgeon of Girard Orthopaedic Surgeons administer bilateral Synvisc-One™ injections. According to his office, they were paid for the professional services and the device (Synvisc-One™) by Anthem within 30 days.

33.  On November 13, 2020 Dr. Michael Kimball administered bilateral Synvisc-One™ injections into the Plaintiff's knees. This time Girard Orthopaedics was not paid.

34.  Plaintiff asserts that he was not made aware of the denial until February 21, 2021. Plaintiff was advised that a

**COMPLAINT AND JURY TRIAL DEMAND**

denial letter was sent.  Plaintiff never received a denial letter
from Anthem.

35.  Plaintiff believes that he contacted KPC on or about
February 21, 2021.  Plaintiff was advised that Girard Orthopaedic
Surgeons failed to submit medical records.  Plaintiff was
informed by Girard Orthopaedic Surgeons that the medical records
were sent to Anthem electronically.

36.  Plaintiff kept following up with Girard Orthopaedic
Surgeons until Plaintiff filed an appeal with Anthem on July 29,
2021.  Plaintiff received a letter from Anthem confirming the
appeal.

37.  Since Anthem claims are administered by KPC, Plaintiff
could not call Anthem directly and had to call KPC.  Plaintiff
called KPC numerous times and was advised every time that KPC and
Anthem "are still working on it."

38.  On November 29, 2021, Plaintiff received a bill from
Girard Orthopaedic Surgeons, Judg. Exh. 3, DKT 26 p 31-35 showing
that Anthem only paid $127.00 of the $2,622.23 claim.

39.  Plaintiff never received the second denial letter from
Anthem.

40.  Plaintiff called KPC on December 6, 2021 as the initial
Anthem letter stated to call the plan administrator.  KPC informs
that the injections are not covered and Plaintiff is not
responsible for any part of the $2,622.23.  KPC further advises
that Girard Orthopaedics cannot balance bill Plaintiff according
to Anthem.

41.  Plaintiff reached out to Girard Orthopaedic Surgeon's

billing company on December 9, 2021 via email and has not received a reply regarding not owing anything.

42. Plaintiff believes that he is responsible as he signed a guarantee of payment in the event an insurance company fails to pay for services rendered by Girard Orthopaedic Surgeons. See Judg. Exh. 4 DKT 26 p. 36-41.

43. On May 16, 2022, Plaintiff's wife received a call from a Collector named Jeff Fisher representing Girard Orthopaedic Surgeons. Plaintiff is now further damaged by Anthem's failure to pay the claim and thus damaging the Plaintiff's excellent credit.

44. On May 19, 2022, Plaintiff received a collection letter from Alternative Recovery Management to recover $2,536.29 on behalf of Girard Orthopaedic Surgeons including monthly interest rate of 10% until the balance is paid.

45. The charges for healthcare services submitted on behalf of the Plaintiff to Anthem were usual, customary and reasonable and in accord with charges to non-Medicare patients insured by companies other than Anthem.

46. Anthem acted in an arbitrary and capricious manner by failing and refusing to honor and pay Plaintiff's claim in accordance with ERISA requirements, practices and provisions and Plaintiff suffered resulting damages in an amount to be proven at trial. Judg. Exh.3 DKT 26 p.32-35 to this Complaint is a summary for the claim for which the Plaintiff seeks recovery in this action. The summary claim listing prepared as of the date of filing of this Complaint is as follows:

Summary listing of claim submitted to Anthem includes the amount billed of $2,622.23 minus the $127.00 Anthem paid and the remaining balance of $2,558.00 plus interest and any other charges outstanding from Girard Orthopaedic Surgeons

## PLAINTIFF HAS STANDING TO PURSUE CLAIMS UNDER ERISA FOR PAYMENT OF BENEFITS AND LEGAL COSTS AND FEES

47.   ERISA governs all aspects of health and medical benefits under ERISA Plans and authorizes a civil action to recover unpaid benefits and legal costs and fees.

48.   Plaintiff has standing to sue under ERISA.  A member or dependent of a member is expressly empowered by section 1132(a) of ERISA to sue to denial of benefits.

49.   Anthem in this action is the proper party defendant. See, *Harris Trust & Sav. Bank v. Salomon, Smith Barney, Inc.*, 530 U.S. 238, 247 (2000); *Cyr v. Reliance Standard Life Ins. Co.*, 647F. 3d 1202 (9th Cir. 2011).

50.   Anthem actually did pay the claim submitted on behalf of Plaintiff (albeit in a deficient and unsatisfactory amount).

51.   Plaintiff has appealed the underpayment/denial asserted by Anthem.  However, the appeal did not result in any meaningful or substantive reconsideration from Anthem and this litigation ensued.

52.   Anthem has systematically violated the applicable claims procedure regulations governing ERISA Plans as are set forth in 29 C.F.R. §2560.503-1.

11

**COMPLAINT AND JURY TRIAL DEMAND**

53.   Anthem has failed to meet the minimum requirements for fulfillment of employee benefit plan procedures to claims.   See 29 C.F.R. §2560.50.-1(a).

### FIRST CAUSE OF ACTION

### DENIAL OF PLAN BENEFITS UNDER ERISA

54.   Plaintiff refers to and incorporates by reference paragraphs 1 through 53.

55.   At all times relevant, Plaintiff was covered under a group policy for health insurance issued by Anthem.

56.   Plaintiff is informed and believes and thereon alleges that Defendant wrongfully denied the claims for benefits by other acts or omissions of which Plaintiff is presently unaware, but which may be discovered in this litigation and which Plaintiff will immediately make Defendant aware of once said acts or omissions are discovered by Plaintiff.

57.   Following the denial of claims made for benefits under the Plan, Plaintiff exhausted all administrative remedies required under ERISA, and performed all duties and obligations on his part to be performed.

58.   Plaintiff's treatments of bilateral Synvisc-One™ injections were covered under this group policy as it was determined they were medically necessary.   Anthem, twice reversed their own denials for bilateral Synvisc-One™ injections after Plaintiff filed grievances through Anthem's Grievance Procedures. Anthem reversed their first denial on October 10, 2017.   See Judg.Dkt.26 Ex. 2 p. 18-20 and 23-24.   Anthem reversed their

12

**COMPLAINT AND JURY TRIAL DEMAND**

second denial on September 28, 2018 which is in the same exhibit. Anthem only reversed their denial after the State deemed treatment medically necessary in Judg.Dkt.26 Ex. 1 p. 6-16.

59.  Medical necessity was established by three Orthopedic Surgeons including the findings of Maximum Federal Services, who backs up the decision based on review of the plaintiff's clinical information and medical literature in their independent medical review.  Therefore, bilateral Synvisc-One™ injections are an appropriate medical treatment for **this** plaintiff.

60.  In *Rea v. Blue Shield of California, 2014*, it is stated, "In addition, the DMHC has asserted that it was not appropriate to list all services a plan needed to achieve parity because beyond specifying some of the essential services, it was sufficient to state that the plans must provide all medically necessary services.  To the extent that certain services are medically necessary, then those services will be provided."

61.  Defendant violated ERISA by wrongfully not covering the benefit under the plan.

62.  As a direct and proximate result of Defendant's actions in denying Plaintiff's claim for medically necessary treatment, Plaintiff is being held liable for payment of treatment that had always been covered.

63.  Defendant wrongfully denied Plaintiff's claim for bilateral Synvisc-One™ injections, in the following respect, among others:

        a. Failure to pay medical benefit payment due to Girard Orthopaedic Surgeons at a time when Defendant knew,

or should have known, that Plaintiff was entitled to those benefits under the terms of the Plan.

64.  As a proximate result of the denial of medical benefits, Plaintiff has been damaged in the amount of all medical bills incurred for his treatment.

### SECOND CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY

65.  Plaintiff refers to and incorporates by reference paragraphs 1 through 53.

66.  Plaintiff alleges breach of fiduciary duty on the part of Anthem for failure to comply with its obligations under U.S.C. § 1133 to provide Plaintiff with a full and fair review of the claim including, but not limited to:

    a. Failure to provide any explanation of the denial of coverage.

    b. After Plaintiff's claim was denied in whole or in part, failure to adequately describe to Plaintiff any additional material or information necessary to Plaintiff to perfect his claim.

    c. Failure to investigate the merits of Plaintiff's claim properly and adequately.

    d. Failure to consider the overwhelming medical evidence, even their own, showing that treatment is medically necessary, safe and most effective.

67.  Plaintiff has been harmed by Anthem's failure to grant a full and fair review specific to the Plaintiff's claim in that the Plaintiff has been sent to Collections.  Plaintiff has been

14

**COMPLAINT AND JURY TRIAL DEMAND**

injured by Anthem's failure and refusal to honor the Plaintiff's
claim in accordance with ERISA requirements, practices and
provisions.

68.   *In Varity Corp. v. Howe, 516 US 489 – Supreme Court
1996,*"Congress forgot to provide for individual relief in § 409
and 502 (a)(2), but that it clearly intended to provide for
individual relief in 502(a)(3)"

69.   In *Beckham v. Liberty Life Assurance Co. of Boston,
2014,* "Having concluded that the remedy applied by the district
court was not provided under § 1132 (a)(1)(B), the Court
determined that 'appropriate equitable relief' was available
characterizing the claim as 'a suit by a beneficiary' against a
plan fiduciary (whom ERISA treats as a trustee) about the terms
of the plan (which ERISA typically treats as a trust)."

70.   Plaintiff has been harmed and requests appropriate
equitable relief in the form of equitable surcharge as permitted
in § 502(a)(3).

71.   As a direct and proximate result of their fiduciary
duty and resulting injuries and damages sustained by Plaintiff as
alleged herein, Plaintiff is entitled to and requests that this
Court grant Plaintiff equitable relief under 29 U.S.C. § 1132(a)
and ERISA § 502(a)(3), 29 U.S.C. § 1144(a), ERISA § 514(b)(2)(A).
See *Unum Life Ins. Co. of America v. Ward, 526 US 358 Supreme
Court (1999)* and *Pilot Life Ins. Co. v. Dedeaux, 481 US 41 –
Supreme Court (1987).* In *Blue Cross & Blue Shield of
Mississippi, Inc. v. Campbell, 466 So. 2d 833, 842 (1984)* the
Mississippi Supreme Court stated that "[w}e have come to term an

insurance carrier which refuses to pay a claim when there is no
reasonable arguable basis to deny it as acting in 'bad faith' and
a lawsuit based upon such an arbitrary refusal as a 'bad faith'
cause of action."  See also *Prudential Insurance Company of
America v. Tate, 347 SW 2d 556 – Tex: Supreme Court 1961.*

72.   In *Carpenters So Cal. Admin Corp. v. El Capitan
Development Co., supra, 53 Cal. 3d at p. 1045,* the Court held,
simply, that the state law at issue "relates to" ERISA plans "by
creating a mechanism for enforcing an employer's contribution
obligations that Congress did not provide."  Id. at p. 1048.
Under section ERISA 1132(a)(1)(B), as well as fraud, tortuous
breach of contract, and violation of statutory duties under the
Insurance Code.

73.   The Supreme Court recently held that plan
administrators who "participate knowingly and significantly in
deceiving a plan's beneficiaries in order to save the employer
money at the beneficiaries' expense" fail to act "solely in the
interest of the participants and beneficiaries," and violate the
duty of loyalty in Section 404(a)(1) of ERISA in *Muse v.
International Business Machines Corp., 1996.*

74.   The Supreme Court in *Varity Corp., v. Howe, 516 US 489
– Supreme Court, 1996* stated that individual equitable relief is
"appropriate" under § 502(a)(3) only where Congress did not
provide adequate relief elsewhere in the statute.

75.   In a recent Supreme Court ruling, *Cigna Corp. v. Amara,
563 US 421 – Supreme Court 2011,* it was stated, "injured
employees even if they did not themselves act in reliance on the

16

**COMPLAINT AND JURY TRIAL DEMAND**

summaries.  Thus, to obtain relief by surcharge for violations of §§ 102(a) and 104(b), a plan participant or beneficiary must show that the violation caused injury, but need to show only actual harm and causation, not detrimental reliance. Pp. 1880-1882."

76.  Plaintiff PRAYS FOR $113,080 ERISA 502(A)(3) equitable surcharge.

### THIRD CAUSE OF ACTION

### COMMON LAW BREACH OF CONTRACT

77.  Plaintiff refers to and incorporates by reference paragraphs 1 through 53.

78.  Defendant, as claim administrator, breached its contract in the Plan by committing various procedural violations when it handled and denied Plaintiff's claim.  The alleged violations that are the subject of this claim are also the subject of Plaintiff's Third Claim for Relief.  Plaintiff believes that there is a breach of contract claim.

79.  Defendant has a fiduciary status under the ERISA Plan. If the Court later disagrees that Defendant is not a fiduciary, then Plaintiff will not have a plausible ERISA claim against Defendant.  For this reason, Plaintiff argues that his breach of contract claim must be added as an alternative form of relief. ERISA's broad preemption clause states that "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . . " 29 U.S.C. § 1144(a).  "The purpose of ERISA is to provide a uniform regulatory regime over employee

benefit plans.  To this end, ERISA includes expansive pre-emption provisions . . . which are intended to ensure that employee benefit plan regulation would be "'exclusively a federal concern.'"  *Aetna Health Inc. v. Davila, 542 US 200 - Supreme Court 2004.*  "The phrase 'relate to' [is] given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'"  *Pilot Life Ins. Co. v. Dedeaux, 481 US 41, 47 (1987)* "The plain language of ERISA provides that it shall preempt state laws that 'relate to' any employment benefit plan."  29 U.S.C. § 1144(a).

## FOURTH CAUSE OF ACTION

### COMPENSATORY DAMAGES AND PUNITIVE DAMAGES

*80.*  Plaintiff refers to and incorporates by references paragraphs 1 through 53 as though fully set forth herein.

*81.*  In California, California Government Code § 7285 makes the protections and benefits offered to employees by private employers.

*82.*  California Business Code § 17200

*83.*  California Civil Code § 1750

*84.*  **California** law provides that "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *EVANSTON INSURANCE COMPANY v. Harrison, 2022*

*85.  Plaintiff becomes concerned every time he requires his bilateral injections whether Anthem will deny the treatment. Plaintiff worries every six months that the medically necessary*

*treatment will be denied.  Plaintiff is now experiencing undue*
*stress regarding the consequences of Anthem's failure to pay the*
*claim.*

86.  In *BAY AREA ROOFERS HEALTH AND WELFARE TRUST v. Sun*
*Life Assurance Company of Canada, Dist. Court, ND California 2014*
the Court has found that the evidence submitted in support of the
genuine dispute doctrine is disputed, and that a jury could find
that Defendant acted unreasonable when it denied reimbursement to
the Trust for Participant X's twins' medical expenses.  Thus, the
Court turns to whether a reasonable jury could award Plaintiffs
punitive damages under their claim for breach of the covenant of
good faith and fair dealing.

87.  Under California law, a party may be awarded damages
only where "there is some evidence of fraud, malice, express or
implied, or oppression." *Spinks v. Equity Residential Briarwood*
*Apartments, 171 Cal. App. 4th 1004, 1052 (2009).  Under Civil Code*
*§ 3294, which authorizes the award of punitive damages in certain*
*instances, "oppression, fraud, or malice must be proven by 'clear*
*and convincing' evidence." Am. Airlines, Inc. v. Sheppard,*
*Mullin, Richter & Hampton, 96 Cal. App. 4th 1017, 1050 (2002),*
"In the usual case, the question of whether the defendant's
conduct will support an award of punitive damages is for the
trier of fact, since the degree of punishment depends on the
peculiar circumstances of each case." *Spinks, 171 Cal. App. 4th*
*1004, 1053* (citing *Hannon Eng'g. Inc. v. Reim, 126 Cal. App. 3d*
*415, 431 (1981).*  Punitive damages are available for breach of
the covenant of good faith and fair dealing in cases dealing with

insurance policies, "because of the special relationship between the insurer and the insured."   *Jonathan Neil & Assoc., Inc. v. Jones, 33 Cal. 4th 917, 937 (2004).*   The Court finds no good reason to diverge from the general principle that punitive damages awards are a question for the trier of fact.   As stated above, a reasonable jury could find that Defendant failed to reimburse the Trust in good faith, and breached the covenant of good faith and fair dealing…which in the insurance context permits a jury to award punitive damages, the Court finds that a reasonable jury could award punitive damages.   In *Hughes v. Blue Cross of Northern California, 215 Cal. App. 3d 832 – Cal: Court of Appeal, 1st Appellate Dist., 1st Div. 1989* the jury rendered a special verdict awarding her $150,000 in compensatory damages and $700,000 in punitive damages.   Mrs. Hughes and her dependents were covered by group medical insurance offered by Blue Cross. This action concerns the periods of hospitalization at Belmont Hills from October 26 to December 18, 1981 and July 13 to August 15, 1982.   For these periods, Mrs. Hughes submitted claims for hospital expenses totaling $23,698.69.   Blue Cross consented to pay only $6,598.69, disallowing the balance on the ground that the hospitalizations were not medically necessary.

88.   Defendant acted unreasonable when it denied, the same chronic medically necessary treatment for the third time.   *BAY v. Sun p.16 23-25 and p.17 1-2.*

89.   Dishman v. UNUM Life Ins. Co. of America, 269 F. 3d 974 – Court of Appeals, 9th Circuit 2001 – "UNUM oversimplifies this case by likening it to Bast and Pilot Life.   The Basts'

**COMPLAINT AND JURY TRIAL DEMAND**

intentional infliction of emotional distress claim was preempted because the emotional distress they allegedly suffered arose from Prudential's failure to timely pay them benefits. The harm they suffered was inextricably intertwined with the plan's decision not to pay. Thus, to find Prudential liable for intentional infliction of emotional distress for not paying benefits would be tantamount to compelling benefits, which assuredly "encroaches on the relationships regulated by ERISA"

90. *Mackey v. Lanier Collection Agency & Service, Inc., 486 US 825 – Supreme Court 1988 – Yet this Court has held that ERISA does not preempt "state-law mechanisms of executing judgments against ERISA welfare benefit plans, even when those mechanisms prevent plan participants from receiving their benefits."*

91. In Aetna Life Ins. Co. v. Lavoie, 475 US 813 – Supreme Court 1986, "The hospital forwarded the appropriate forms and medical records along with a bill for $3,028.25 to appellant's local office in Mobile, Alabama. The local office refused to pay the entire amount, tendering payment for only $1,650.22. The local office also sent a letter to the national office, concluding that the 23-day hospitalization was unnecessary and that [h]ospital records do not indicate anything to the contrary." Plaintiff refers to Anthem, partial payment of $127 of the $2431.76 and amount rising with 10 percent interest. Further, in Aetna Life Ins. Co. v. Lavoie, 475 US 813 – Supreme Court 1986, "The jury awarded $3.5 million in punitive damages. The trial judge denied appellant's motion for judgment n.o.n. or, alternatively, for remittitur." "further clarified the reach of

the Due Process Clause regarding a judge's financial interest in a case.  There, a justice had cast the deciding vote on the Alabama Supreme Court to uphold a punitive damages award against an insurance company for bad faith refusal to pay a claim.  At the time of his vote, the justice was the lead plaintiff in a nearly identical lawsuit pending" People v. Freeman, 222 P. 3d 177 – Cal: Supreme Court 2010.

92.   Whereas Plaintiff states and restates DOES 1 through 53 and DOES 80 through 91. Plaintiff prays for $150,000 compensatory damages and $700,000 in punitive damages.

## REQUEST FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendant as follows:

1. Payment of health benefits due to Plaintiff under the Plan;
2. Pursuant to 29 U.S.C. § 1132(g), payment of all costs and legal fees incurred in pursuing this action;
3. Payment of prejudgment and post-judgment interest as allowed for under ERISA
4. $113,080 ERISA 502(A)3 equitable surcharge
5. Compensatory damages $150,000 and Punitive damages $700,000 and
6. For such other and further relief as the Court deems just and proper.

1

2

## JURY TRIAL

3

4

Plaintiff Joseph Iparaguirre hereby demands a jury trial on all

5

causes of action set forth in this Complaint.

6

7

8

Dated this 1st day of March, 2023

9

10

11

12                              By _____

13                                  Joseph Iparaguirre

14

15                                  JOSEPH IPARAGUIRRE IN PRO PER

16                                  11801 PIERCE STREET
                                    SECOND FLOOR
17                                  RIVERSIDE, CA  92505

18                                  (951) 779-6998

19

20

21

22

23

24

25

26

27

28

**COMPLAINT AND JURY TRIAL DEMAND**